UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER STANLEY REISS, *for himself and as parent of O.R.*, | : :  : |
| Plaintiff | : : |
| v. | : No. 5:17-cv-03294 : |
| COMMONWEALTH OF PENNSYLVANIA; COUNTY OF LEHIGH; and MICHELLE A. VARRICCHIO, *individually and in her official capacity as a judiciary officer*, | : : : : : |
| Defendants | : |

## **O P I N I O N**

**Plaintiff's Petition for Preliminary Injunction, ECF No. 1 – Denied**

**Joseph F. Leeson, Jr.**                                                                      **August 2, 2017**
**United States District Judge**

### I.     Introduction

Walter Reiss is currently involved in a child custody dispute with his estranged wife in a Pennsylvania state court. A few months ago, the state court issued an interim order awarding sole custody of their child to his wife, with the exception of one visit per week for Reiss in a therapeutic setting under the supervision of a licensed counselor. Unhappy with that result, Reiss filed this suit, pro se, against the state court judge who issued the order, the county where the state court proceedings are ongoing, and Pennsylvania itself. He claims that the custody proceedings have not been fairly conducted and that the interim decision to award custody to his wife was in error. Coupled with his complaint is a request for a preliminary injunction that would order the state court to rescind its interim order and draft a new order awarding him shared custody of his child, and also enjoin the defendants from further violations of his rights.

Because granting Reiss the relief he seeks would improperly interfere with the state court's ability to manage the ongoing custody proceedings, over which the state court has exclusive jurisdiction, principles of comity between the state and federal courts require federal court to abstain from hearing his claims. His request for a preliminary injunction is therefore denied, and this case is dismissed.

## II.  Background[1]

Reiss and his wife were married in 2007. They have a three-year-old son. In 2015, Reiss's wife filed for divorce and sought custody of their child. Reiss claims that early in this process, he was "surreptitiously manipulated" by his wife to enter into a "grossly imbalanced" custody agreement drafted by her and her counsel. Compl. ¶¶ 10-11. He claims that in the months that followed, his wife used the agreement to limit him to two three-hour visits per week, plus custody on alternating weekends.

In addition to her efforts to limit access to their son, Reiss claims that his wife has "on various occasions threated to take [their] minor child to Russia and never return." *Id.* ¶ 13. Reiss's wife is Russian, and he claims that he has recently come to learn that "his wife of ten years has been operating as an unregistered agent of a foreign power, with the Russian SVR [the country's Foreign Intelligence Service] as the beneficiary of her efforts." *Id.* ¶ 16. According to Reiss, "there is a new and disturbing initiative for Russian agents—whether recruited at home and dispatched to the United States, or whether innocently migrating to the United States and surreptitiously being recruited under threat of bodily harm or death to their remaining family in Russia—to procreate with U.S. citizens and produce offspring," with the goal that, "[e]ventually[,] these dual-citizen children would secretly obtain passports for both the US and Russia, and be able to conduct operations with minimal risk of detection once they come of age." *Id.* ¶ 16. Reiss claims that he has "discovered enough evidence of [his wife's] intent and early efforts to covertly begin conditioning their [three-year-old] son to be a future Russian operative to give him serious concerns for the future safety and well-being of his child." *Id.* ¶ 17. He also alleges that "as an ESL instructor at Lehigh University, . . . she has unprecedented access to highly sensitive information." *Id.* ¶ 18.[2]

Aside from those concerns, Reiss also believes that his wife has "deeply rooted mental health issues, . . . consistent with those of Narcissism, Sociopathy and Borderline Personality Disorder." *Id.* ¶ 19. He claims that she has expressed suicidal intentions, subjected him to "prolonged physical and emotional abuse," and expressed her "verbal and written intent to cause [him] physical harm or death." *Id.* ¶ 13.

Formal custody proceedings commenced this year in the Family Court Division of the Court of Common Pleas of Lehigh County, Pennsylvania. Thus far, the two sides have attended two trial dates, the latest on April 24. Following that April 24 trial date, the court issued an "Interim Order," which awarded sole custody of the child to Reiss's wife, subject to Reiss being permitted to have one visit per week "in a therapeutic setting supervised by a licensed counselor, or another agreed upon qualified individual." Compl. Ex. 1, at 1, ECF No. 1-2 [hereinafter Interim Order]. The Order also set a date for the next day of trial and provided that it would "remain in effect until further Order of Court." *Id.* at 2.

---

[1]  These facts are taken from Reiss's complaint and are assumed to be true at this stage of the proceedings.
[2]  According to Reiss, his wife has surrendered her passport to the state court as part of the ongoing custody proceedings, but he still expresses concern that she would be able to abduct their child. *See id.* ¶ 15.

A few months later, Reiss filed this suit against the judge who issued the Interim Order, as well as Lehigh County and the Commonwealth of Pennsylvania. Broadly speaking, he complains that the trial has not been fairly conducted and that the court erred in issuing the Interim Order that awarded sole custody to his wife.

With respect to how the trial has been conducted, Reiss cites to errors he believes the court has made, including the court's refusal to admit audio recordings Reiss made while he was being examined by a court-appointed psychologist, as well as other "evidentiary photos . . . [and] videos" Reiss sought to use to impeach the psychologist's testimony, Compl. ¶¶ 22, 57, the court's decision to "disqualif[y] in its entirety" testimony from Reiss's "highly qualified Expert Witness, Dr. John Mitchell," which Reiss had hoped to use to rebut the psychologist's report *id.* ¶¶ 52-53,[3] its failure to address a "Petition for Contempt" Reiss filed against his wife for removing their child from daycare for a two-month period, *id.* ¶ 55, its "abrupt" termination of Reiss's cross-examination of the psychologist, *id.* ¶ 59, and its "refus[al] to allow [him] to seek emergency medical attention at the opening of the April 24th trial date, [which] forc[ed] [him] to try to operate while in extreme pain, which may have contributed to unnecessary mistakes," *id.* ¶ 56. Reiss also complains about a "private conversation" that occurred between the judge and opposing counsel during one of the days of trial. *Id.* ¶ 61.

As for the Interim Order itself, Reiss believes that the court was wrong to conclude that awarding sole custody to his wife at this time was in the best interest of their child. He points to various reasons why he believes that his wife is an unfit parent, including his claim that she "suffers from [a] very serious mental disorder [that] is widely understood to be detrimental to the mental health of minor children," *id.* ¶ 51, "has chosen an occupation and lifestyle which is entirely not conducive [to] the healthy upbringing of a child," *id.*, and has "taken profound and defiant steps to destroy and discredit [him]" and isolate him from his child, *id.* ¶ 63. Reiss suggests that he, by contrast, is "of good character, integrity, virtue and honor," *id.* ¶ 26, "has always been willing and anxious to have an active, shared role in his son's upbringing," *id.* ¶ 28, and has "been a deliberate role model father to his child," *id.* ¶ 36.

Reiss's complaint does not contain any specifically enumerated claims, but he makes reference throughout his complaint to the substantive and procedural due process rights that parents possess in the care and custody of their children, and the Court therefore understands him to be claiming a violation of both dimensions of his due process rights. *See Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997) (recognizing that parents have "constitutionally protected liberty interests" in the "custody, care and management of their children" and that the Due Process Clause therefore "prohibits the

---

[3] Reiss's claim that the state court disqualified Mitchell's testimony seems to be at odds with the text of the Interim Order, which specifically mentions that the court considered, among other things, "testimony . . . from Dr. John Mitchell, a psychologist called by [Reiss]," in the course of making its decision, Interim Order at 1, but the Court will assume, in the light most favorable to Reiss, that the state court did disqualify Mitchell's testimony.

3

government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process").

For relief, Reiss asks this Court to order the Court of Common Pleas "to immediately rescind and withdraw the unlawful Interim Order" and "create a new Interim Order fully reinstating his shared legal and physical custody over his minor child," Compl. ¶¶ 81-82, "enjoin[] the Defendants from violating his rights," *id.* ¶¶ 77, and direct them to treat him "fairly and without further prejudice," *id.* ¶ 79. He also seeks a declaration that his due process rights were violated. *Id.* ¶ 74. Accompanying his complaint is a request for a preliminary injunction, which generally seeks this same relief.

## III. Abstention is warranted from Reiss's demands for equitable relief.[4]

The federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and the heart of the federal courts' jurisdiction is the power to hear claims "arising under the Constitution," 28 U.S.C. § 1331. That would ordinarily mean that this Court must hear Reiss's claims that his constitutional rights have been violated.

But there are "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief," *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)—cases where "withholding . . . authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *NOPSI v. Council of City of New Orleans,* 491 U.S. 350, 359 (1989) (quoting *Younger v. Harris*, 401 U.S. 37, 45 (1971)). Among them are cases where a plaintiff asks a federal court to "interfer[e] with pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint*, 134 S. Ct. at 591 (quoting *NOPSI*, 491 U.S. at 368). That describes what Reiss is asking this Court to do.

Reiss seeks to have this Court review the correctness of an interim child custody order put in place by a state court—and the evidentiary rulings the state court made along the way—while the custody proceedings are still ongoing. Entertaining such claims would transform the federal district courts into child custody appeals courts, vested with the authority to hear interlocutory appeals of interim custody orders. Under Reiss's approach, any parent unhappy with an interim custody order could invite federal review by identifying errors—whether procedural or substantive—in the state court's decision and couching those errors as infringements upon the parent's constitutionally-protected interests in the care and custody of their child. The end result would be that any orders the state trial courts issue to manage their ongoing custody proceedings would be "rendered nugatory" by the prospect of being immediately enjoined and reviewed by the federal courts. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 n.12 (1987) (quoting *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977)).

---

[4] "[A]bstention may be raised by the court Sua sponte." *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976).

The Pennsylvania courts have addressed the unique status that interim custody orders occupy in the judicial system and the harm that undue interference with them would cause to the trial courts' ability to manage custody proceedings. The focus of any custody proceeding is the child, and allowing an aggrieved parent to immediately challenge any interim order the trial court issues subjects the child to "the protraction of custody litigation through repetitive appeals" and the "uncertainties of ongoing litigation." *G.B. v. M.M.B.*, 670 A.2d 714, 720 (Pa. Super. Ct. 1996) (en banc). Protecting these interim orders from immediate challenge "serves to uphold the integrity of the trial process by not interfering with the trial court's efforts to craft a final decision and by not permitting premature challenges to those efforts." *Id.* at 721. These considerations, together with the "important policy concerns implicated in custody proceedings," lead even Pennsylvania's own appellate courts to refuse to intervene in child custody proceedings until the trial court has "completed its hearing on the merits" and issued a custody decision "intended by the court to constitute a complete resolution of the custody claims pending between the parties." *Id.* at 720. Allowing parents to upset that careful balance by seeking immediate appeal and review of interim orders in federal court would wreak havoc on "the state courts' ability to perform their judicial functions." *Sprint*, 134 S. Ct. at 591 (quoting *NOPSI*, 491 U.S. at 368). Under these circumstances, Pennsylvania's interest in maintaining the integrity of its child custody proceedings is of "sufficiently great import" to warrant abstention. *Pennzoil*, 481 U.S. at 13 (quoting *Juidice*, 430 U.S. at 335).

The proper way for Reiss to assert his arguments and claims is through the Pennsylvania courts, whether by seeking reconsideration of the Interim Order in the trial court (if such review is available) or by lodging an appeal at the appropriate time.[5] The notion of comity—"that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways," *Younger*, 401 U.S. at 44—compels this result.[6]

---

[5] Reiss admits that these avenues for review are available to him, but he expresses doubt about his chances of succeeding on a request for reconsideration and frustration with the time that may pass before he can seek an appeal. *See* Compl. ¶ 68. But abstention can be defeated only by showing that the state courts are "not . . . open to adjudicate [his] claims." *Pennzoil*, 481 U.S. at 14. Neither his "belie[f] that his chances of success . . . are not auspicious," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 610 (1975), nor the fact that he "urgently desire[s] prompt relief," *Pennzoil*, 481 U.S. at 17, permits him to bypass the state courts and seek federal intervention. Nor do Reiss's allegations suggest that the custody proceedings were undertaken in bad faith or to harass (particularly in light of the fact that Reiss's wife has, at least for now, prevailed in the custody dispute, *see Getson v. New Jersey*, 352 F. App'x 749, 753 (3d Cir. 2009) (explaining that a "proceeding is conducted in 'bad faith' for abstention purposes when it is brought 'without hope' of success")), or that there is some other extraordinary circumstance "render[ing] the state court incapable of fairly and fully adjudicating" his claims. *Moore v. Sims*, 442 U.S. 415, 433 (1979) (quoting *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975)); *see also Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002) ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception.").

[6] Even if abstention were not warranted, Reiss's equitable claims are likely barred for at least one, if not two, additional reasons. First, it is a fundamental tenet of equity that relief is available only when there is no adequate remedy at law, and, as Reiss admits, relief is available to him through the state custody proceeding. *See Pulliam v.*

**IV. Reiss's claims for damages are not viable.**

In addition to his demand for equitable relief, Reiss also seeks money damages. Compl. ¶¶ 71, 85 (alleging that he has sustained proximate damages in excess of $355,000 and demanding damages against each defendant "in an amount exceeding $75,000"). Ordinarily, when abstention is warranted in a case that seeks both equitable relief and money damages, the appropriate course of action is to stay the claims for damages until the state proceedings have concluded, not to dismiss them. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions."). In this case, it is clear that Reiss's claims for damages are not viable.

With respect to the state court judge, damages cannot be recovered because of the doctrine of judicial immunity. *See Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages."). "This doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice." *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 536 (1868).[7]

Damages are also not available against the Commonwealth of Pennsylvania, both because of Pennsylvania's sovereign immunity to suit and because "[s]ection 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

---

*Allen*, 466 U.S. 522, 537 (1984) (observing that "[t]he limitations already imposed by the requirements for obtaining equitable relief against any defendant—a showing of an inadequate remedy at law and of a serious risk of irreparable harm—severely curtail the risk that judges will . . . hav[e] to defend themselves against suits by disgruntled litigants" (citation omitted)).

Second, Reiss's claims—all of which turn on his dissatisfaction with the Interim Order—may also be barred by the *Rooker-Feldman* doctrine, which prevents the federal courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). While that doctrine normally applies only to "final decisions of state courts"—which the Interim Order is not—the Third Circuit has applied it to bar review of a state court preliminary injunction on the theory that the injunction "resolved, at least for the moment, the dispute between the parties which forms the basis of the federal complaint at issue in [the] case." *In re Diet Drugs*, 282 F.3d 220, 241 (3d Cir. 2002) (quoting *Port Auth. Police Benevolent Ass'n v. Port Auth. Police Dep't*, 973 F.2d 169, 178 (3d Cir. 1992)). The same could be said for the Interim Order in this case, though there are differences between a preliminary injunction and the Interim Order that give reason for pause—particularly the fact that the former is immediately appealable, while the latter is not. *See Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (observing that *Rooker-Feldman*'s "rationale is undercut" if there is no "legal basis to appeal the state-court decision").

[7] This doctrine does have two exceptions. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citations omitted). Neither applies here. Reiss's criticism of the state court judge relates to how the judge has managed the custody proceedings and the rulings the judge has made—all actions that are judicial in character. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (explaining that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge"). And there is no suggestion that the state court judge lacked jurisdiction over the custody proceedings. *See id.* at 356 (explaining that "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him").

While damages can be recovered from a local government like Lehigh County in certain limited circumstances, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), Reiss's decision to name the County as a defendant has no basis. Lehigh County's only connection to this suit is that it happens to host the Court of Common Pleas of Lehigh County, where the custody proceedings are taking place. *See* Compl. ¶ 48 (alleging that "[t]he County of Lehigh . . . deprive[d] [him] . . . of liberty and property, as well as the fundamental pursuit of happiness, by having entered an unprecedented and wholly unconstitutional Interim Order"). It thus "appears that [Reiss] named the County as a defendant because [he] mistakenly believes that the . . . Court of Common Pleas is a County entity," when it is in fact part of the Commonwealth. *Scheib v. Pennsylvania*, 612 F. App'x 56, 59 (3d Cir. 2015) (per curiam). Had Reiss named the Court of Common Pleas as a defendant instead of the County, he would not have fared any better, because as a part of the Commonwealth, the Court of Common Pleas is no more an appropriate target for damages than the Commonwealth itself. *Id.*

While claims for damages should ordinarily be stayed when abstention comes into play so that they can be resumed after the state proceedings have run their course, the legal immunity that shields both the state court judge and the Commonwealth would bar Reiss from later pursuing these claims, which makes dismissal appropriate. *See Wattie-Bey v. Att'y Gen.'s Office*, 424 F. App'x 95, 97 (3d Cir. 2011) (per curiam) (concluding that claims for damages "were properly dismissed rather than stayed because . . . [the] defendants that [the plaintiffs] elected to name in [the] suit [were] entitled to sovereign immunity under the Eleventh Amendment").

## V.    Conclusion

Granting Reiss the equitable relief he seeks would lead to improper federal interference with the type of state court order that is "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 134 S. Ct. at 591 (quoting *NOPSI*, 491 U.S. at 368). This Court must therefore abstain from hearing his claims. For that reason, Reiss's request for preliminary injunctive relief is denied, and his complaint is dismissed—including his claims for damages, which are not viable in light of the defendants' immunity.[8] A separate order follows.

---

[8]    While no motion to dismiss has been filed, "if [a] complaint is insufficient on its face, it long has been the practice of both trial and appellate federal courts to dismiss the entire action when the deficiency is brought to their attention," such as through a request for preliminary injunctive relief. 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2950 (2d ed. 1995); *see Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 495 (1900) (remarking, in the context of a request for preliminary injunctive relief, that "if the bill be obviously devoid of equity upon its face, and such invalidity be incapable of remedy by amendment[,] . . . we know of no reason why, to save a protracted litigation, the court may not order the bill to be dismissed").